1                    UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4    UNITED STATES OF AMERICA,      ) Case No. 1:14-cr-00114-DAD-BAM
                                    )
5                   Plaintiff,      ) Fresno, California
                                    ) Friday, June 24, 2016
6         vs.                       ) 11:03 A.M.
                                    )
7    MICHAEL GALLOWAY,              ) Hearing re:  defense motion
                                    ) for return of information and
8                   Defendant.      ) other discovery.
     ───────────────────────────────)

9                    TRANSCRIPT OF PROCEEDINGS
10         BEFORE THE HONORABLE BARBARA A. McAULIFFE
                 UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For Plaintiff:            MEGAN A. S. RICHARDS
13                             U.S. Attorney's Office
                               2500 Tulare Street, Suite 4401
14                             Fresno, CA   93721
                               (559) 497-4000
15
     For Defendant:            ANN H. McGLENON
16                             Federal Defender's Office
                               2300 Tulare Street, Suite 330
17                             Fresno, CA   93721
                               (559) 487-5561
18
     Court Recorder:           OTILIA ROSALES
19                             U.S. District Court
                               2500 Tulare Street, Suite 1501
20                             Fresno, CA   93721
                               (559) 499-5928
21
     Transcription Service:    Petrilla Reporting &
22                                Transcription
                               5002 - 61st Street
23                             Sacramento, CA   95820
                               (916) 455-3887
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

1

<u>FRESNO, CALIFORNIA, FRIDAY, JUNE 24, 2016, 11:03 A.M.</u>

(Call to order of the Court.)

THE COURT:  All right.  Good morning.  Please have a seat.  And let me call the case of United States v. Michael Galloway, Case No. 14-114.

May I have your appearances for the record, please?

MS. RICHARDS:  Good morning, Your Honor.  Megan Richards for the United States.

THE COURT:  Okay.

MS. McGLENON:  Good morning, Your Honor.  Ann McGlenon for Mr. Galloway.  He has a waiver on file.

THE COURT:  Okay.  All right.  I have received and reviewed the motion filed by the defense for return of information as well as other discovery, and I looked at the defendant's -- excuse me -- the government's opposition as well as the evidence that is submitted as exhibits to the opposition.

So I will take oral argument if you want.  Otherwise, I can give you a tentative of where I'm kind of heading on this based on what I've reviewed.

MS. McGLENON:  Well, I don't know about counsel, but -- and I don't know how the Court feels about giving a tentative and then hearing argument, but I think that would --

THE COURT:  Yeah.  That kind of focuses you on what

1    my issue is.

2         Okay.  Looking at the opposition by the government,

3   the opposition indicates and does attach a declaration from

4   Mr. -- is it *Livesy?

5         MS. McGLENON:  Livesy.

6         THE COURT:  Livesy -- Mr. Livesy.  And -- in which he

7   says that he does remember getting a subpoena, but he kind

8   of -- he didn't use the word purge, but he says I don't have

9   any records from 2009.

10        That doesn't indicate to me that he doesn't -- he

11   never had it.  He's just saying that, well, I didn't keep

12   records from 2009.  That's how I interpreted his email.

13        But there's also a -- I thought a declaration.  Where

14   is that, Ms. Richards, from Livesy?

15        MS. RICHARDS:  Your Honor, there's no -- there's only

16   the -- there's a handwritten affidavit.

17        THE COURT:  Right.  The Affidavit, okay.  Yeah.

18        MS. RICHARDS:  And that was -- that is the last

19   attachment to the opposition.  So the PACER number I guess is

20   51-5.

21        THE COURT:  51-5, okay.  I was looking at the wrong

22   one.  I thought I'd seen that.  Yes, there it is.  Okay.

23        So it does indicate to me that he said he remembers

24   getting it, but he doesn't keep it and he doesn't have it

25   anymore.

3

1      So that's -- the question is if he got one -- if he

2  got a summons from the government and produced the documents in

3  response to the summons, the documents would certainly have

4  been administratively compelled and therefore not entitled to

5  be returned unless for other reasons.

6      And even if there wasn't a summons, I'm not quite

7  sure that I'm at a point where I could say if the government

8  asks someone even a CPA to disclose information about a client

9  and that CPA voluntarily does so, does that compel the

10 government to return those documents to the person that had the

11 confidential information or is that your client, Mr. Galloway,

12 now have a right against the CPA for having turned over

13 confidential information without compulsory process.

14     I don't know that I'm at a point where I could say

15 even if there wasn't a summons, the government is required to

16 return those documents.

17     MS. McGLENON:  Well, Your Honor, may I address that?

18     THE COURT:  Yes, um-hmm.

19     MS. McGLENON:  Your Honor, the affidavit given that

20 was obviously made up how many years later -- seven years

21 allegedly after the fact -- first, I question its validity

22 because what I was told by Livesy was that he did not have any

23 records, that what -- he got a letter from the government that

24 requested a meeting and requested him to dig out the records,

25 that that meeting was scheduled and that the government -- that

4

1    the agents did not show up on the date of the meeting, but

2    showed up a week to ten days later, and that he gave them the

3    box.  And his offhand comment was, I shouldn't have done that.

4          Now, I did not get an affidavit from Mr. Livesy.  He

5    was not willing to -- he said that to me, my paralegal, and my

6    investigator and I mentioned it in my declaration that I -- on

7    information and belief that that's what he would say.

8          I think that is simply -- whatever this is, there was

9    no summons and no proof of service and I think that according

10   to the cases and the statute, those are -- that is required and

11   the case that was cited by the government was a case where they

12   did a thing called -- I think they called it a circular letter

13   where they go around to everybody that's not involved in that

14   case.

15         It was the taxi drivers when they were trying to get

16   the owner of the taxi company and they went to all the people.

17   And the thing about the IRS is there are rules on all these

18   things.  There are rules when you prepare a circular letter and

19   you provide it to people and you have them declare, you know, I

20   have been told by my boss the following, so that they can be

21   made into witnesses.

22         For -- my position is this is a special agent of the

23   Internal Revenue Service.  He clearly knows his duty because

24   when I looked at the -- when I showed up for discovery with my

25   investigator and he had approximately 12 boxes, each of those

1    boxes was accompanied by a summons.

2         And the one summons -- I said this is very

3    interesting.  I want to see the summons.  I think he's actually

4    Livesy, but for the CPA's disclosure of my client's documents.

5         And that was the one thing that could not be

6    provided.  There was no proof of service, and there was no

7    mention of any summons in any of the prior investigation

8    statements.

9         Not until we reach March 2016 was there any mention

10   of having served a summons.  And I've been provided additional

11   discovery which shows this daily diary which, of course, does

12   not indicate -- I think it shows a preparation date of

13   6/16/2016.

14        And I would just note that, yes, it says that on

15   April 9th, 2009, they attempted to contact Galloway at Catholic

16   online and then it said served summons to tax preparer, but

17   that's the first time and the first note and the first

18   information that says that and that was declared this month.

19        THE COURT:  Okay.  So is it your position that in

20   investigating a potential crime, which I assume at this point

21   they weren't sure it was, that the IRS cannot ask for voluntary

22   compliance from a CPA?  Because that's basically what your

23   argument is, is that if he voluntarily turns it over, I have to

24   have a summons in order for them to be used either in the case

25   or at trial.

6

1          MS. McGLENON:  Yes.  That is my position because

2   Galloway did not give permission for the disclosure of his

3   written documents and requested their return.

4          THE COURT:  Okay.  The government?  Ms. Richards.

5   And you can have a seat and argue if you wish.  It doesn't

6   matter.

7          MS. RICHARDS:  Your Honor, first to address the

8   question that you just asked defense counsel.  The government

9   disagrees with the defendant's position and that is because

10   there -- the IRS and any other agency is allowed to obtain

11   documents from cooperative individuals who voluntarily

12   relinquish them to aid an investigation and that would apply to

13   CPAs.

14          It may be that there are some individuals where it's

15   different, like an attorney that has -- you know, where there

16   are privileges, but there's no such privilege here with a CPA.

17   And so --

18          THE COURT:  Well, what about Ms. McGlenon's argument

19   that there are, although she didn't cite me to the regulation,

20   regulations dealing with summonsing information from target

21   individuals?

22          MS. RICHARDS:  That's true.  There are regulations

23   dealing with summonsing records from target individuals or from

24   people who have the records as target individuals and that's

25   something that wasn't raised in the defendant's brief and is,

1    in the government's view, a complicated issue that would

2    probably need to be fleshed out more as to whether -- if the

3    Court wants the summons and the government's position is there

4    was a summons, whether the regulations were followed, and to

5    the extent they were or weren't, what the remedy is, and none

6    of that really has been raised.

7            THE COURT:  Well, no, it hasn't been raised except

8    for just now because she's saying that there are precise

9    regulations dealing with summons and how they're -- I don't

10   know what the regulations say.

11           And because those regulations were not followed and

12   there were -- there's no evidence of a summons other than the

13   declaration of the agent or the statements of the agent as well

14   as the affidavit from Mr. Livesy, therefore there was not one.

15           So she's trying to infer because the regulation was

16   not followed, there was not a summons issued.  That's what

17   she's saying and because she's looked at every other piece of

18   evidence which was accompanied by a summons, this one is unique

19   and different and therefore there wasn't a summons, so she's

20   raising an inference there.

21           MS. RICHARDS:  And the government believes that's not

22   a totally fair inference on these facts.  Just because the

23   summons is gone now doesn't mean there never was a summons.

24           Paperwork gets lost.  And I will say paperwork like

25   this should not get lost.  It should be maintained, but where

1   it wasn't as here, that doesn't mean that it never existed.

2         THE COURT:  Okay.  All right.  If I don't -- you

3   know, I mean do you have a citation for the regulations?  I'm

4   not sure that I'm going to stand by my tentative.  I'm not

5   entirely sure about that.  I mean I would like to know what the

6   regulations say.

7         MS. RICHARDS:  Your Honor, we could submit

8   supplemental briefing on the regulations.  I also have Special

9   Agent Applegate here who can testify about serving the summons

10   and why he doesn't have a record of it.

11         THE COURT:  Ms. McGlenon.

12         MS. McGLENON:  Your Honor, not only is there no

13   record of the summons, there's no record of a proof of service,

14   and I'm happy to question Mr. Applegate about that, but I

15   really think the issue here is that -- is whether they were --

16   well, number one, in my experience with law enforcement, if

17   they prepare a summons and serve a summons, they preserve the

18   summons and fill in a proof of service.

19         And I will just note that one of the items which I

20   got out of the IRS manual regarding -- I got two sections

21   regarding the examining process and the -- and criminal

22   investigation regarding -- well, I would note that the

23   execution of a statement under oath, which is what that

24   affidavit said that it was, that the agent put Mr. Livesy under

25   oath and then had him make a statement.

9

1           And the IRS criminal investigation investigative

2     techniques and the rights of witnesses and immunity and

3     compulsion orders, we haven't gotten any of those.

4           The other -- I'm sorry.  The other issue that -- the

5     other matter that I had requested had to do with the -- I'm

6     sorry -- with the statute of limitations, but in terms of the

7     subpoenas and summons, I believe I inserted that into my reply

8     and that the government -- the way I perceive this, this is the

9     burden of the government to show that they correctly got

10    this -- these documents.

11          THE COURT:  Okay.  So my question for you is why.

12    Why is that their burden?  Why -- assume there was no summons.

13    Let's just hypothetically say there was not a summons.

14          MS. McGLENON:  Um-hmm.

15          THE COURT:  And the agent says no, I forgot, I didn't

16    issue a summons, but I went to Mr. Livesy and he produced

17    the -- I told him what I was doing.  I told him that his client

18    was under investigation.  Would he give me the documents and he

19    said -- Mr. Livesy said yes, here's a box.  Here's the box of

20    documents, take them.

21          MS. McGLENON:  Well, number one, if that's his

22    position now, then all his -- all these prior statements are

23    untrue.  He's never taken that position.

24          THE COURT:  Okay.  That's not my hypothetical.  I'm

25    just --

1     MS. McGLENON:  I understand.  And the answer to the

2  Court's question is under the cases which we cited in the

3  original motion, if they are taken, they belong to Galloway and

4  once Galloway requested their return, they should have been

5  returned --

6     THE COURT:  Okay.

7     MS. McGLENON:  -- and those cases are --

8     THE COURT:  Are these the ones in your reply brief?

9     MS. McGLENON:  No.  In my opening brief and I'll

10  just -- Mason vs. Pulliam and Lind v. Tivatero (phonetic),

11  Mason v. Pulliam -- and they are Fifth Circuit cases --

12  actually Pulliam was a Northern District of Georgia and I

13  obtained these out of a tax fraud textbook.

14     But the documents seized without process must be

15  returned and even an IRS summons is not self-enforcing.

16     If their position is we didn't have a summons, we

17  just went and asked, then in that case, when we say return

18  them, they have to return them.

19     THE COURT:  All right.  Ms. Richards.

20     MS. McGLENON:  And just one other little comment

21  which is that the Court said that at the time they were

22  determining whether this would be criminal.

23     Once Mr. -- Special Agent Applegate gets it, they

24  made that determination.

25     Mr. Galloway had cooperated with all the civil IRS

1   people up until 2010 and had cooperated with the civil matters

2   in Kern County and, for whatever reason, they decided to go

3   after him criminally anyway.

4           THE COURT:  Ms. Richards.

5           MS. RICHARDS:  To address the Fifth Circuit cases,

6   they all go with anomalous jurisdiction because in those cases,

7   there was no actual criminal case pending, and so those cases

8   are very different than the posture here.

9           In addition, in those cases, the records came

10  directly either from the defendant or in one case, the

11  defendant's attorney and they were outside the -- either

12  outside the scope of the summons or they were given -- in some

13  of the cases, I believe they were given to the IRS by the

14  taxpayer and then the taxpayer said I want to take them back.

15          And in those cases, they did -- in those cases, the

16  Court ordered return of the property.  But I think it's

17  important to note that it was just returning the originals of

18  the property and there were orders like you have to stop

19  copying at the time he demanded them back.

20          It seems like in this case, Ms. McGlenon is not just

21  asking for return of the original property, she's asking

22  essentially almost for suppression.  So --

23          THE COURT:  I wouldn't be ruling on the suppression.

24  That'd be before Judge Drozd.

25          MS. RICHARDS:  Um-hmm.  And so the Fifth Circuit

1    cases just seem too different from what's going on here.

2           THE COURT:  There is a regulation that Ms. McGlenon

3    cited in her reply brief, Title 26, 301.7602 regarding the

4    summons, that the IRS has the authority to summons people for

5    tax investigations or the like.

6           Would that be the regulation under which this summons

7    would have been issued?

8           MS. RICHARDS:  Your Honor, I believe so, but I'm not

9    a hundred percent on that.

10          THE COURT:  Does the agent know?

11          MR. APPLEGATE:  What's the regulation?

12          MS. McGLENON:  7602.

13          MR. APPLEGATE:  But I believe 7602 makes reference

14   and also along with 7609, the two together -- I believe they

15   work together.

16          THE COURT:  Okay.

17          MR. APPLEGATE:  And then there's a paren later in

18   7602 that applies to criminal investigations.

19          THE COURT:  Well, I'm just -- I am just, you know,

20   trying to see -- as Ms. Richards said in the beginning,

21   assuming that there wasn't even a summons -- and that's an

22   assumption.  I'm just assuming for purposes of argument that

23   there was not a summons issued or anything to compel Mr. Livesy

24   to produce the documents, what is the remedy?

25          I mean the remedy really -- is there a remedy?  Is

1    there?  Just because he voluntarily produced, does that mean

2    they have to go back or not?  You see what the Court's dilemma

3    is.  There's not really a remedy.  The remedy that you're

4    seeking is not necessarily one that must be -- is what the

5    Court must conclude happened for this potential violation, as

6    you're saying.

7            MS. McGLENON:  Well, Your Honor, I had understood

8    that the remedy was the return of the documents, if they were

9    obtained from a private party without a summons and Mr.

10   Galloway requested their return.

11           These -- that's what I believe the remedy is.

12           THE COURT:  The problem I'm having is this.  We're

13   dealing with the IRS, which is highly regulated and so that's

14   why I'm kind of focusing on the regulations.

15           MS. McGLENON:  Right.

16           THE COURT:  But in any other law enforcement

17   investigation, when a law enforcement officer goes to Joe

18   Schmoe and asks for evidence and asks for documents and that

19   person turns it over to the law enforcement person, the law

20   enforcement has come into possession of the documents legally,

21   constitutionally, and voluntarily.

22           So that's why I'm having a little bit of difficulty

23   here because I'm concerned that the regulations here are so

24   pervasive that it is in fact as you're suggesting, Ms.

25   McGlenon, that you have to comply with the regulations;

1   otherwise, they need to be returned, or is it a regular law

2   enforcement type of investigation where if you got the

3   evidence, you got -- I mean we can't stifle law enforcement

4   investigations and that's basically what the argument is except

5   that we're dealing with the IRS.

6           MS. McGLENON:  Exactly.  And that's my argument.  We

7   are not talking about the FBI.  We are not talking about the

8   FBI going in and getting -- you know, talking to somebody and

9   having them turn over the drugs and everybody knows that that's

10  okay.

11          This is, you know, 10,000 pages or a hundred thousand

12  or 300,000 pages of regulations that these agents are trained

13  in and capable of following, and the reason I believe that

14  these situations are very rare is because the special agents

15  follow the regulations ordinarily.

16          And one of the things that happened in this case I

17  believe was I think everybody jumped too soon, and there was

18  not any investigation of who Mr. Galloway was, of where his --

19  they did ask questions regarding cash hoard, which means

20  somebody that has a big pile of money from before and uses that

21  to pay his bills which is okay to do.  You can keep money in

22  your mattress.

23          And so what they did was they went to Livesy.  They

24  either asked for or commanded or obtained Mr. Galloway's

25  computer QuickBooks documents and a box of other matters.

1          In what I have read, if they don't follow their

2    procedures, then the documents need to be returned and I guess

3    we can address later the further question of cannot be used.

4          Mr. Galloway did not give permission and there's no

5    question about that, and Mr. Livesy -- you know, I would just

6    note there are notes that I've received.  Everything that I've

7    received that was prepared prior to March of 2016 does not show

8    that a summons was served, and everything that was prepared

9    after March 2016 when we raised the question shows that there

10   was.

11         Now, I don't -- and I think that on that basis, it is

12   clear that there was not a summons and your question about,

13   well, what if Livesy just gave up the documents, I think that

14   once we said maybe he did, maybe he didn't, but he didn't have

15   permission that the documents need to be returned.

16         THE COURT:  Okay.  Ms. Richards.

17         MS. RICHARDS:  There is no law that I'm aware of that

18   prevents the IRS from utilizing informal means to receive

19   documents from a taxpayer, and there may be some sort of remedy

20   that the taxpayer would have against the CPA, but that's not

21   what we have at issue here.

22         But I just want to say, though, that's not actually

23   what happened here.  There was a summons and I know defense

24   counsel was inferring from there not having been reports that

25   were created at the time that the summons was served that there

16

1    was no summons at all.  But I don't believe that that was the

2    case.

3              We did produce a Jencks for this hearing, the special

4    agent's diary which notes that a summons was filed in --

5              THE COURT:  And that was?

6              MS. RICHARDS:  It's a served summons, tax preparer,

7    4/9/2009 and -- when did you make that entry?

8              MR. APPLEGATE:  That would have been prepared before

9    the end of that month.

10              MS. RICHARDS:  So -- but --

11              THE COURT:  Contemporaneously -- not 2016, sometime

12    back?

13              MR. APPLEGATE:  Correct.  The report -- the physical

14    report that she has in her hand, I generated the report as a

15    whole for the case on that date, the 2016 date, but as far as

16    the entry goes, it was made contemporaneously.

17              MS. RICHARDS:  So I mean it seems like here for this

18    hearing there would be no -- I mean the documents wouldn't be

19    returned because either there was a summons or there wasn't a

20    summons and either way, if there's no summons, that's allowed.

21              And then -- I mean the IRS is allowed to get

22    voluntarily documents from third parties.  That would be

23    allowed.  So that wouldn't require return of the documents.

24    Again, I'm not saying that's what happened here.

25              What happened here is there was a summons.  That's

1    our position, and in which case, the documents also shouldn't

2    be returned based on what was in the brief.

3         THE COURT:  Okay.  All right.  I think I understand

4    the parties' arguments.

5         There's a couple things that I want to look at that

6    have been cited here and I want to go back and take a look at

7    those just to be sure.

8         Now -- and I understand the documents related from

9    Mr. Livesy is what we've been talking about here.  Are there

10   other issues in the motion that we need to address?

11        MS. McGLENON:  Your Honor, the -- one of the things I

12   just -- maybe I could mark these.  These I obtained from the

13   IRS manual which is online and it shows summons.

14        Each summons is supposed to have an attachment.  It

15   is supposed to be approved.  It is supposed to be served, and

16   the service -- and I'm looking at Form 2039 which is I believe

17   the one that was referenced in the government's opposition.

18        And there are attached also provisions of the

19   Internal Revenue Code Section 7602 which is examination of

20   books and witnesses.

21        And regarding notice of contact of third parties,

22   which is what Mr. Livesy would be, those purposes are all

23   supposed to be set forth.

24        Now, there is a reference in 7602 that says that no

25   administrative summons is required when there -- no

18

1  administrative summons when there is a justice department

2  referral, and it says that no summons may be issued and the

3  secretary may not begin any action under 7604 to enforce any

4  summons with respect to any person if a justice department

5  referral is in effect with respect to such person.

6          I am assuming that once we get to --

7          THE COURT:  Which subsection of --

8          MS. McGLENON:  I'm in 7602(d)(2).

9          THE COURT:  Okay.

10         MS. McGLENON:  And then there's a -- 7603 is -- all

11 relates to service, third-party recordkeeper and it goes

12 through who those are and then how it gets enforced in 7604.

13         If I may, Your Honor, I can provide these to the

14 Court, the summons and the provisions that go from 7602 through

15 7610.

16         THE COURT:  Well, I can look -- and that's part of

17 what I'm going to do is look those up --

18         MS. McGLENON:  Okay.

19         THE COURT:  -- and I have access to that as well.

20         MS. McGLENON:  That's fine.

21         THE COURT:  I don't have access to the manual, if you

22 have something out of the manual.

23         MS. McGLENON:  The manual -- you can google it.

24         THE COURT:  Okay.

25         MS. McGLENON:  And I can -- I do have the manual and

1   I'm happy to provide it, but that's how I got it.

2          THE COURT:  Okay.

3          MS. McGLENON:  Would the Court like me to provide it?

4          THE COURT:  No.  No.

5          MS. McGLENON:  Okay.

6          THE COURT:  I understand your position on this issue.

7          MS. McGLENON:  Okay.  Thank you.

8          THE COURT:  Again, back to the motion, are there

9   other issues aside from the documents from Mr. Livesy that we

10  need to address?

11         MS. RICHARDS:  No, Your Honor, but to turn back to

12  the --

13         THE COURT:  No.  Just a moment.

14         MS. RICHARDS:  Oh.  Okay.

15         THE COURT:  I want to make sure on this -- I want to

16  make sure are there any other issues aside from the documents

17  from Mr. Livesy that we need to address?  Ms. McGlenon.  I

18  heard no from the government.

19         MS. McGLENON:  Your Honor, in terms of the

20  discovery --

21         THE COURT:  Yes, ma'am.

22         MS. McGLENON:  -- it is my understanding that the

23  government has reviewed Henthorn material.  I would -- they've

24  established that there is none.  My request would be whatever

25  they've reviewed that they provide to the Court under seal.  I

1  don't need to see it, but I'd like the Court to review it if

2  that's appropriate.  If it isn't, I can -- I will take the

3  government at their word.

4       THE COURT:  I'm going to have to take the government

5  at its word --

6       MS. McGLENON:  Okay.

7       THE COURT:  -- that it complied with its obligation

8  to review the personnel file under the case authority of

9  Henthorn and produce anything that arguably falls within either

10 Brady or Giglio and produce those.

11      The Court typically does not get involved in that

12 unless the government feels there's something that I need to

13 review.

14      MS. McGLENON:  And, Your Honor, I have not -- I

15 believe that the government has been extremely conscientious

16 about getting stuff as I've requested it.

17      I have not gotten -- and I don't know that they

18 exist -- videotapes, audiotapes, or still photographs of any

19 activities.  I have not gotten any notice of any experts and --

20 but I believe I have gotten statements, tangible objects, and

21 I've gotten reference on the Henthorn.

22      So that's the long answer to the short question.  I

23 believe that we've gotten everything that we're entitled to at

24 this point, and I understand that discovery is ongoing.

25      THE COURT:  Okay.  All right.  Ms. Richards.

1        MS. RICHARDS:  Your Honor, I just wanted to -- just
2   make a few comments.
3        We only did a Henthorn request for Special Agent
4   Applegate in advance of today's hearing.  We followed the
5   procedures of our office.
6        I didn't personally review the files.  Somebody
7   else --
8        THE COURT:  Right.
9        MS. RICHARDS:  -- did.  They sent a letter.
10       THE COURT:  Right.
11       MS. RICHARDS:  And --
12       MS. McGLENON:  I'm sorry.  Can we get -- it was
13   somebody in the U.S. Attorney's office, not somebody in
14   Mr. Applegate's office.
15       MS. RICHARDS:  It would be several people reviewing
16   several files.  One person was in his office and there are also
17   other personnel files I think with different agencies that were
18   reviewed, but there was nothing in any of the files.
19       MS. McGLENON:  According to other special agents not
20   according to U.S. Attorneys or anyone in Department in Justice?
21       THE COURT:  Well, I think there's probably a standard
22   policy that the U.S. Attorney's office provides, and maybe if
23   that's a written policy, you could provide that to Ms. McGlenon
24   as to what the policy is for reviewing Henthorn requests.
25       And I would imagine that -- it's never been raised

1    that that policy is inadequate, but it -- I would assume that

2    it follows the requirements of Henthorn and it does, as I

3    recall the case, include some supervisory review within the

4    U.S. Attorney's office, but I'm not sure what the policy says.

5    Okay?

6            MS. McGLENON:  And, Your Honor, in my experience,

7    that's when I have actually obtained Henthorn, which is rare,

8    I've obtained it after the review by the U.S. Attorney.

9            THE COURT:  All right.  Okay.

10           MS. RICHARDS:  I followed our office's Henthorn

11   policy which I can see if it's something that I can share with

12   defense counsel.

13           We have not provided notice of experts yet and we

14   will before -- sufficient time before trial.

15           There is one issue that I had with the discovery

16   requests and that was in the witness section.  There's a

17   request for an order that the government turn over witness

18   statements 15 working days before trial.

19           It's not the government's practice to hold witness

20   statements until the day before trial or right before trial,

21   but in preparing for trial, frequently we have to create new --

22   or create a, you know, another witness statement or every once

23   in a while, there may be a witness whose witness statement

24   doesn't have anything like Brady or anything in it like that,

25   but we need to withhold it for whatever reason.

1          And I don't know that that would be the case here,

2     but there's no requirement that we produce every witness

3     statement 15 working days before trial and so I would just

4     object to that being part of the order.

5          THE COURT:  Well, I wasn't planning on ordering that.

6          MS. RICHARDS:  Okay.

7          THE COURT:  And she's not asking for that.  She wants

8     to put her request on -- I would imagine it would follow the

9     same procedure that the U.S. Attorney's office always follows

10    for producing witness statements, which is not the day before

11    or the day of that person testifying, but in advance of trial.

12         MS. RICHARDS:  Right.

13         THE COURT:  All right.  So --

14         MS. McGLENON:  Your Honor, just to clarify.  I did

15    request 15 days before trial.  That's a standard request that

16    we use when we're getting ready for trial so that we can be

17    prepared.

18         And I do request it in terms of most especially Brady

19    for people whether or not the plaintiff intends to call the

20    witness.  I just want -- I want to be able to know that if

21    there's a witness that we're going to have to call, for

22    example, somebody with exculpatory information that has been

23    provided to the government under Brady, I think 15 days before

24    trial is incredibly tight and --

25         THE COURT:  Well, I'm thinking that the government is

24

1   not going to keep -- withhold Brady material and witness

2   statements, that --

3           MS. RICHARDS:  That is correct.

4           THE COURT:  The government understands --

5           MS. McGLENON:  Okay.

6           THE COURT:  -- its obligation under Brady to produce

7   exculpatory information to the defendant.

8           MS. McGLENON:  Okay.

9           THE COURT:  The issue you're asking me to rule on is

10  to compel the government to produce witness statements 15 days

11  before trial and how do I do that -- that would be in

12  violations of the Jencks Act.  How would I do that?

13          MS. McGLENON:  Well, Jencks -- that's when Jencks is

14  due.

15          THE COURT:  No.  That's not my understanding.

16          MS. McGLENON:  That's been the way that it has

17  been --

18          THE COURT:  The practice has --

19          MS. McGLENON:  -- the practice here.

20          THE COURT:  Yeah, the practice here.

21          MS. McGLENON:  So that's why I requested it.  If the

22  Court doesn't -- and counsel don't want to follow the practice,

23  you know, we can request a continuance on the day of trial.

24  That's the alternative.

25          THE COURT:  I'm not hearing Ms. Richards say that

1    she's not going to produce it.  She's just objecting to an

2    order including that so she has the flexibility to comply with

3    the policy when it is appropriate unless there is a witness who

4    testifies differently.

5           So it sounds like what she's saying is I'm going to

6    give it to you because she doesn't want what you just said, a

7    continuance at trial.  She doesn't want that either.

8           Correct, Ms. Richards?

9           MS. RICHARDS:  That's correct.

10          THE COURT:  All right.

11          MS. McGLENON:  That's fine.  Thank you.

12          THE COURT:  All right.  So I think we have addressed

13   all the issues.  I'm taking under submission the issue on

14   Mr. Livesy to look at the authorities Ms. McGlenon has cited to

15   me and I'll get an order out shortly.

16          Is there anything else?

17          MS. McGLENON:  No, Your Honor.

18          MS. RICHARDS:  Your Honor, may we submit any

19   supplemental briefing on these IRS regulations?  It just seems

20   like they're complicated and the issue of whether these items

21   should be returned, especially if we're talking about returning

22   them with also an order that we couldn't -- you know, was

23   basically what would be with suppression.

24          THE COURT:  Well, I couldn't rule on the suppression

25   issue.

26

         MS. RICHARDS:  Okay.  And so just to clarify, would
you be -- you are looking at the regulations to see if we will
be required under the regulations to return the originals to
the defendant, but we would be able to retain copies that we've
made already?

         THE COURT:  Well, I'm looking at the regulations to
understand the IRS's authority for the summons and whether
there is anything in the regulations which -- yeah, kind of
precludes the IRS from acting outside of a summons procedure.

         You know, so for instance, I've got to read the
regulation to say is this the only mechanism by which the IRS
can obtain information.  Because, again, as I said,
investigation by law enforcement doesn't -- in other areas
may -- they may proceed in voluntary cooperation with
witnesses.

         Does the IRS have that same flexibility?  That's the
only issue I'm considering as well as the two Fifth Circuit
cases that Ms. McGlenon cited to me.  I did not read them in
full and I will go back into those.

         MS. RICHARDS:  And, Your Honor, if I find --

         THE COURT:  If you want --

         MS. RICHARDS:  -- a case --

         THE COURT:  If you want to file a supplemental brief,
I'll allow you to do so.

         MS. RICHARDS:  Thank you, Your Honor.

1          THE COURT:  When would you like to do that?

2          MS. RICHARDS:  I would only be -- well, just I don't

3     want to file more than you need.  I was intending to look for a

4     case that would show that the IRS may --

5          THE COURT:  Sure.

6          MS. RICHARDS:  -- get documents voluntarily --

7          THE COURT:  Yes.

8          MS. RICHARDS:  -- from other parties.  It sounds like

9     this is primarily the issue that you're looking at.

10          THE COURT:  Yes.

11          MS. RICHARDS:  Okay.

12          THE COURT:  So how about --

13          MS. RICHARDS:  I could do that.  I can look today and

14     file by Monday.

15          THE COURT:  Oh, I'm not going to make you work that

16     hard.  I'm sure there's other things --

17          MS. RICHARDS:  Okay.

18          THE COURT:  -- you can do.  I mean can you do it in a

19     week?

20          MS. RICHARDS:  Sure.

21          THE COURT:  And then Ms. McGlenon, you can have an

22     opportunity if you desire to file a further supplemental after

23     she files hers.  Would you like to do that?

24          MS. McGLENON:  Yes.

25          THE COURT:  Okay.

1        MS. RICHARDS:  Your Honor, may I have till the next

2   Monday?

3        THE COURT:  Yes.  Well, that's the 4th -- so

4   July 5th?

5        MS. RICHARDS:  Yes, please.

6        THE COURT:  July 5th for the government's

7   supplemental brief and then, Ms. McGlenon, how long would you

8   like?

9        MS. McGLENON:  The following Monday -- or actually,

10  if we could make it the following Tuesday.  It's hard to do

11  stuff on Monday.

12       THE COURT:  Yes.

13       MS. McGLENON:  Actually, that's -- no, because I'm

14  gone that week.

15       THE COURT:  Okay.

16       MS. McGLENON:  We can either do it the Friday after

17  the 5th or I can do it the week after the Ninth Circuit

18  conference.

19       THE COURT:  You're at the Ninth Circuit conference?

20       MS. McGLENON:  No, I'm not there.  I'm babysitting

21  for a week that week.

22       THE COURT:  Okay.  So you're gone for the week of

23  July 11th.

24       MS. McGLENON:  11th.

25       THE COURT:  So what if I give you till July 20th?

29

1   That's a Wednesday.

2          MS. McGLENON:  Okay.

3          THE COURT:  So you'll have it the week July 5th and

4   you can look at it 6th, 7th, 8th.  You'll be off a week, and

5   then have three days by July 20th.

6          MS. McGLENON:  That seems like an awfully long time.

7   I'm getting towards.  That's fine.

8          THE COURT:  Well, we can do it quicker.  I'm just --

9          MS. McGLENON:  I'd rather respond on the Friday.

10          THE COURT:  Okay.  July 8th then.

11          MS. McGLENON:  Thank you.

12          THE COURT:  All right.  July 8th, the defendant's

13   reply or supplemental brief and then I'll just take it under

14   submission.  Okay.  All right.  Ms. Richards.

15          MS. RICHARDS:  Would it be helpful to have a hearing

16   where we subpoena Paul Livesy to testify and to -- because it

17   sounds like we're doing supplemental briefing to see what would

18   happen if there were no summons, but do we also -- does the

19   Court need to also determine whether there was a summons, I

20   guess is what my -- is my question.

21          I think the case law is going to show that if there

22   was no summons, then there's no return of property in this

23   case, but --

24          THE COURT:  I don't think I want to set that at this

25   moment.

30

1          MS. RICHARDS:  Okay.

2          THE COURT:  Let me evaluate what you submit and then

3    make that determination because then that puts Mr. Livesy to a

4    burden.  It puts counsel, both government and defense counsel,

5    to the burden, and if you talk amongst each other and you think

6    that you might need that, I'm happy to accommodate that, but

7    I'm not sure that I need it.

8          MS. RICHARDS:  Okay.  Thank you.  And for the

9    supplemental brief, just -- I know I've -- I think I asked

10   this, but you just want it on the narrow question of is the IRS

11   able to obtain documents through an informal process not within

12   the regulations.

13         THE COURT:  I don't think I need supplemental

14   briefing, but if you --

15         MS. McGLENON:  Right.

16         THE COURT:  -- want to --

17         MS. RICHARDS:  Okay.

18         THE COURT:  -- add something to the argument that has

19   been raised today on whatever issues have been raised today,

20   you're welcome to do so.

21         MS. RICHARDS:  Okay.

22         THE COURT:  And then Ms. McGlenon can respond to

23   that.

24         MS. RICHARDS:  All right.  Thank you.

25         THE COURT:  Okay?  All right.  All right.  Anything

1   else?

2        MS. McGLENON:  Your Honor, so we can anticipate that

3   we will get something from you sometime after the 8th of July

4   rather than --

5        THE COURT:  Yes.  It's going to be -- it's going to

6   have to be because I'm at the Ninth Circuit that next week.

7        MS. McGLENON:  Right.  I understand.

8        THE COURT:  So --

9        MS. McGLENON:  Oh -- okay.  I won't -- I don't

10  really -- I don't know what the government is wanting to add.

11  I think a lot -- a more productive use of the time would be for

12  the Court to read and rule and then the government can object

13  or request a reconsideration or go to --

14        THE COURT:  Or you can.

15        MS. McGLENON:  -- the district or I could.  I just --

16  I think we're adding unnecessary layers, but that's --

17        THE COURT:  Well, I've been asked --

18        MS. McGLENON:  I'm done.

19        THE COURT:  -- for supplemental briefing on the

20  issues and I'm going to grant that and I'll rule as quickly as

21  possible after that.  I realize you have a trial date coming up

22  and I'm not going to prolong it whatsoever.

23        MS. McGLENON:  Right.  Thank you.

24        MS. RICHARDS:  Okay.  Thank you, Your Honor.

25        THE COURT:  All right.  Thank you.

1    THE CLERK:  Court's in recess.

2    (Whereupon the hearing in the above-entitled matter was

3 concluded at 11:54 a.m.)

4                        --o0o--

5                       CERTIFICATE

6    I certify that the foregoing is a correct transcript from

7 the electronic sound recording of the proceedings in the above-

8 entitled matter.

9

10 /s/ Mary C. Clark                  Date:  June 27, 2016

11 Mary C. Clark, Transcriber

12 AAERT CERT*D-00214

13

14

15

16

17

18

19

20

21

22

23

24

25