UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL GALLOWAY,<br><br>Defendant. | No. 1:14-cr-00114-DAD-BAM<br><br>ORDER RE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br>(Doc. No. 67) |

Defendant Michael Galloway is charged by way of indictment with four counts of attempting to evade and defeat payment of tax in violation of 26 U.S.C. § 7201. (Doc. No. 1.) On September 2, 2016, counsel on behalf of defendant Galloway filed a motion to suppress all evidence obtained as the result of an allegedly illegal search and seizure of his business records obtained by Internal Revenue Service (IRS) agents from defendant's certified public accountant (CPA), Carl Livsey. (Doc. No. 67.)[1] Alternatively, defendant Galloway moved to exclude all evidence obtained by the government as a result of alleged violations of 26 U.S.C. §§ 7603 and 7609 by IRS Special Agent Brian Applegate.

On October 11, 2016, the court held a hearing on the motion. (Doc. No. 76.) Assistant United States Attorneys Michael Tierney and Megan Richards appeared on behalf of the

---

[1] Counsel for defendant Galloway did not request an evidentiary hearing in connection with the motion. *See* Local Rule 430.1(h).

1

government.  Assistant Federal Defenders Erin Snider and Ann McGlenon appeared on behalf of defendant.  (*Id*.)  The court heard oral argument and the motion was taken under submission for decision.  For the reasons set forth below, defendant Galloway's motion will be denied.

## I.  The Evidence

As noted above, the defendant did not request an evidentiary hearing in connection with the pending motion to suppress evidence.  Instead, defendant has filed with the court four exhibits in support of his motion.  (Doc. No. 67-1.)  In support of its opposition to the pending motion the government has submitted six exhibits.  (Doc. Nos. 69-1, 69-2, 69-3, 69-4, 69-5, and 69-6.)  In support of his reply, defendant has submitted the supplemental declaration of defense investigator Victor D. Gonzalez.  (Doc. No. 72-1.)  Collectively, the declarations and exhibits submitted by the parties in connection with the pending motion reflect the following.

In a letter dated November 2, 2006, the IRS informed defendant Galloway that his 2003 federal income tax return had been selected for audit and requested that he provide a variety of tax related documents.  (Doc. No. 69-2 at 7–11.)  In the midst of this audit, Galloway's CPA, Carl Livsey, sent defendant a letter dated August 13, 2007, notifying him that he was terminating the provision of all accounting and tax services immediately due to Galloway's non-payment of fees in connection with services previously rendered.  (Doc. No. 69-2 at 5.)  In that letter CPA Livsey also advised defendant that the IRS audit was still in progress and that he needed to engage the services of another accountant to represent him and his company.  (*Id*.)  On August 7, 2008, defendant's case was approved for criminal investigation by the IRS Criminal Investigation Division (CID).  (*Id*. at 3.)  A March 30, 2009 entry in Special Agent Applegate's IRS criminal investigation daily diary notes that he "[a]nalyze[d] quickbooks."  (Doc. No. 67-1 at 2.)

On April 9, 2009, IRS CID Special Agent Kulbir Singh Mand and Applegate went to the office of defendant's business, Catholic Online, in Bakersfield, California.  (Doc. No. 67-1 at 20.)[2]  When the agents approached the front door to the business, an unidentified male locked the door and informed the agents that he was calling the police.  (*Id*.)  The agents called the

---

[2] Special Agent Applegate's memorandum of activity dated April 15, 2009 narrates an account of the events of April 9, 2009.  (*See* Doc. No. 67-1.)

2

Bakersfield Police Department dispatch and informed them that they were two plain clothed and armed federal agents waiting for the arrival of police. (*Id*.) Prior to the police arrival, an individual identifying himself as Nick Leyendecker exited the building and approached the agents. (*Id*.) The agents informed him that they wanted to provide Michael Galloway with some information. (*Id*.) Leyendecker went back inside Catholic Online and shortly thereafter came out and provided the agents with the contact information for Galloway's attorney. (*Id*.) Bakersfield police later arrived at the scene and the IRS CID agents departed. (*Id*.)

After visiting the Catholic Online on April 9, 2009, agents Mand and Applegate served CPA Livsey with a summons requiring the production of records relating to his former client, defendant Galloway. (Doc. No. 69-4 at 2.)[3] In his memorandum of activity dated that same day Agent Applegate wrote:

> In light of the fact that this contact with MICHAEL GALLOWAY's employees made a previously covert investigation overt, I decided that it was important to serve Carl Livsey with the summons as soon as possible in order to obligate Livsey to maintain the records and ultimately provide them to me. I handwrote the summons using a blank summons from, FORM 2039, that I had with me. I do not recall making or maintaining any copies of the summons before serving the summons on Livsey.

(*Id*. at 2.)

On June 22, 2010, IRS CID Special Agents Mark Silva and Applegate interviewed CPA Livsey at his place of business. (Doc. No. 69-3 at 2.)[4] Livsey had prepared most of defendant Galloway's tax returns and identified Galloway's 2003, 2004, and 2005 tax returns as among those he prepared. (*Id*.) Livsey stated that he used profit and loss statements printed from

---

[3] This account of the service of summons comes from Agent Applegate's memorandum of activity dated April 25, 2016. (*See* Doc. No. 69-4 at 2–3.) Defendant Galloway has argued that the court should assume that no summons was issued. The court notes that the defendant has previously moved for return of the documents in question pursuant to Rule 41 of the Federal Rules of Criminal Procedure. The assigned magistrate judge denied that motion. (Doc. No. 64.) In so ruling, the magistrate judge also concluded, based upon the evidence before the court, that a summons had been issued to CPA Livsey and the documents called for were turned over to the IRS pursuant thereto. (*Id*. at 3-4.) The court is not persuaded by the evidence presented on this motion that it should stray from that finding.

[4] Applegate's memorandum of June 30, 2010 summarizes this interview. (*See* Doc. No. 69-3.)

Quickbooks and provided to him by Galloway's bookkeeper and wife to prepare Galloway's tax returns. Livsey was not provided with bank records in preparing the returns and did not review the returns with Galloway. (*Id*. at 2-3.) The IRS audited Galloway's 2003 tax returns. (*Id*. at 3.) During that audit, Livsey obtained an additional Quickbooks print to use to assist his analysis during the audit. (*Id*.) Livsey noticed that the newly obtained Quickbooks print reflected dollar amounts that did not match the Quickbooks print that he had used to prepare the 2003 tax return for Galloway. (*Id*.) During the audit, Livsey showed the auditor the Quickbooks printout showing the additional information. (*Id*.) Livsey did not know who provided him with the additional Quickbooks information. (*Id*.) Livsey also reviewed the payroll tax information and concluded that the IRS was correct in that regard and that it appeared Galloway owed payroll taxes. (*Id*.) Livsey did not prepare the payroll tax returns and did not know who did. (*Id*.) Livsey told Galloway about the audit of his 2003 return. (*Id*.)

On March 31, 2016, defense investigator Gonzalez and Assistant Federal Defender McGlenon went to the IRS to review discovery in this case. (Doc. No. 72-1 at 1.)[5] McGlenon told Agent Applegate that although they would review the boxes of discovery that the agent had set up on tables and mark items for copying, they really only wanted to see the summons for the CPA records. Agent Applegate stated that he had looked in his file, but could not find the summons, and then showed investigator Gonzalez and Assistant Federal Defender McGlenon the box of records obtained from CPA Livsey, which also did not contain the summons. (*Id*.) Agent Applegate reported that he had checked with the agent who had accompanied him when he went to see CPA Livsey but that agent did not have a copy of the summons either. (*Id*.)

On September 13, 2016, Assistant U.S. Attorney Megan Richards interviewed Livsey over the telephone with Assistant U.S. Attorney Michael Tierney and IRS CID Special Agent Michele Casarez also on the call. (Doc. No. 69-3 at 5.)[6] During that interview Livsey stated as follows.

---

[5] Gonzalez summarizes this visit in his declaration dated September 23, 2016. (*See* Doc. No. 72-1.)

[6] Special Agent Casarez's memorandum of contact dated September 13, 2016 summarizes this telephone call. (*See* Doc. No. 69-3 at 5–6.)

4

In general when he "receives a request for certain documents regarding the tax years under audit, he will give his client the letter and take whatever documents the clients provides him and submit them to IRS. The client is aware he is giving the documents to IRS as part of the audit." (*Id.*) Each of Livsey's clients would also sign a power of attorney form on file. (*Id.*) Galloway gave Livsey a disk with Quickbooks records for 2003–2005. (*Id.*) An IRS special agent issued Livsey a summons for Galloway's records and an agent then picked up those records. (*Id.* at 5–6) Livsey, however, did not remember if he told Galloway about the summons; however, his normal practice was to call a client about an audit or a summons. (*Id.* at 6.)

On September 14, 2016, AUSA Richards interviewed Agent Applegate. (Doc. No. 69-4 at 4.)[7] Applegate stated that he served Livsey with a summons asking for records relating to the preparation of tax returns for the tax years 2003 through 2006 for Galloway and any of his businesses. (*Id.*) The summons was handwritten. (*Id.*) In the last ten years, Agent Applegate does not recall ever preparing a handwritten summons with the exception of the one he served on Livsey. (*Id.* at 5.) IRS Special Agent Kulbir Mand was with Applegate when he physically served the summons on Livsey. (*Id.* at 4.) Agent Applegate stated he would have sent a copy of the summons to Galloway after serving it on Livsey. (*Id.* at 5.) He also would have given a copy of the summons to Galloway's attorney after he received a power of attorney signed by Galloway and his attorney. (*Id.*) Agent Applegate said he would have written a due date on the summons for at least twenty-three days after the date of service to allow Galloway an opportunity to quash the summons. (*Id.*) Applegate kept all of the summonses issued in the case in a folder in his office. (*Id.*) However, at the time of the interview, a copy of the summons issued to Livsey could not be found in this paperwork. (*Id.*)

On September 15, 2016, AUSA Richards telephonically interviewed Special Agent Mand. (Doc. No. 69-5 at 2.)[8] Agent Mand recalled being with Agent Applegate on April 9, 2009 for the

---

[7] Special Agent Michael Coleman's memorandum of interview dated September 15, 2016 summarizes the interview. (*See* Doc. No. 69-4 at 4–6.)

[8] Agent Casarez summarized this call in a memorandum of interview dated September 16, 2016. (*See* Doc. No. 69-5 at 2–3.)

5

attempted interview of defendant Galloway at the offices of Catholic Online and the subsequent issuing of the summons to CPA Livsey. (*Id*.) Agent Mand explained "they did not initially expect to be issuing a summons that day however considering the reaction of the employees [at Catholic Online], the agents felt it was necessary to contact the CPA and preserve records." (*Id*.) Agent Mand had a blank summons form and gave it to Agent Applegate and watched him complete the form by hand. (*Id*.) Agent Mand did not see specifically what was written on the form summons. (*Id*.) Agents Mand and Applegate drove to Livsey's office and handed the hand written summons to him. (*Id*. at 2–3.) Agent Mand's work diary for April 9, 2009, reflects that he assisted Agent Applegate with issuing the summons on that date. (*Id*. at 4.)

On September 15, 2016, Agent Applegate located the missing file copy of the summons he had issued to CPA Livsey on April 9, 2009. (Doc. No. 69-4 at 11.)[9] In his memorandum dated the following day Agent Applegate noted:

> In reviewing that summons . . . it does not have the description of the items that were requested by the summons. Although that portion of this file copy was not completed, the delivery copy that Carl Livsey received did include a description of items requested.
>
> In response to the April 9, 2009 summons to Carl Livsey, Livsey provided two boxes of records. One box contained tax preparation files for MICHAL GALLOWAY, Your Catholic Voice, and Your Catholic Voice Foundation; a Quickbooks CD-ROM containing records for Catholic Online; and a number of folders containing bills paid by Michael Galloway. The second box contained folders with payroll information for Catholic Online.

(*Id*. at 11–12.)[10]

In that memorandum Agent Applegate also explained an entry he had made in his daily diary for March 30, 2009 as follows:

/////

---

[9] Agent Applegate summarized this in a memorandum of activity dated September 16, 2016. (*See* Doc. No. 69-4 at 11–12.) A copy of the handwritten summons dated May April 9, 2009 has been submitted to the court by the government as an exhibit in opposition to the pending motion to suppress evidence. (Doc. No. 69-6.)

[10] Likewise, Agent Applegate noted in prior a report that "Carl Livsey provided a Quickbooks backup disc for Catholic Online." (Doc. No. 67-1.)

>The diary entry reads "Analyze quickbooks. Mortgage files, and bank records. Spreadsheet." The quickbooks that are referred to in that diary entry are reports that were provided to Tax Compliance Officer Sharil Yonan during the audit of MICHAEL GALLOWAY'S tax returns. Specifically, those reports were:
>
>1. "Catholic Online, General Ledger, January – December 2003" which has a print date of January 10, 2007 and consist of 120 pages (Bates 8356 – 8475).
>
>2. "Catholic Online, Profit & Loss Detail, January – December 2003" which has a print date of January 13, 2007 and consists of 124 pages (Bates 8481 – 8605).

(*Id*. at 11.)[11]

## II. Analysis

As noted, defendant Galloway moves to suppress from admission into evidence the tax records received from CPA Livsey by IRS agents, arguing that 26 U.S.C. § 7609 and the Code of Professional Conduct for CPA's conferred upon him a reasonable expectation of privacy in the documents he had provided to his accountant, Livsey. (Doc. No. 67 at 6–7.) Alternatively, defendant Galloway argues the court should exercise its equitable powers to exclude from evidence at trial the business records that the government obtained due to the failure to comply with the requirements of 26 U.S.C. §§ 7603 and 7609. (*Id*. at 11.) Below, the court will address each of these arguments.

### 1. Reasonable Expectation of Privacy

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998): *see also Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007). A reasonable expectation is "one that has a source outside of the Fourth Amendment, either by

---

[11] The court pauses to note that it finds the conducting of this aspect of the IRS investigation, as well as the explanations for the way in which it was carried out, to be somewhat odd. Indeed, Agent Applegate appears to acknowledge that some of the actions taken by him were out of the ordinary. (Doc. No. 69-4 at 5.) However, as noted above, no evidentiary hearing was requested in connection with the pending motion and no credibility determinations are being made in ruling on it.

7

reference to concepts of real or personal property law or to the understandings that are recognized and permitted by society." *Carter*, 525 U.S. at 88. (internal quotation omitted).  However,

> [T]he extent to which the Fourth Amendment protects people may depend on where those people are.  We have held that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."

*Id*. (citation omitted).

Defendant Galloway seeks suppression of all evidence obtained by IRS agents from his former CPA on the grounds that the records in question came into government custody as a result of an unlawful seizure.  Fatal to this aspect of the pending motion is the fact that defendant Galloway had no legitimate expectation of privacy in the tax records he had turned over to his accountant.  Generally speaking, one does not have a reasonable expectation of privacy in information revealed to a third party which is passed on to the government. *See United States v. Miller*, 425 U.S. 435, 443 (1976) ("This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."); *see also S.E.C. v. Jerry T. O'Brien, Inc*., 467 U.S. 735, 743 (1984) ("It is established that, when a person communicates information to a third party even on the understanding that the communication is confidential, he cannot object if the third party conveys that information or records thereof to law enforcement authorities."); *Donaldson v. United States*, 400 U.S. 517, 522 (1971) (an IRS summons directed to third party does not tread upon any interest of the taxpayer to whom the summonsed records relate protected by Fourth Amendment); *Harris v. U.S.I.R.S.*, 758 F.2d 456, 457 (9th Cir. 1985) ("Such summonses issued to a third party recordkeeper do not violate the Fourth Amendment."); *Lewis v. United States*, No. 2:11-mc-00039-WBS-DAD, 2012 WL 1197784, at *8 (E.D. Cal. Apr. 10, 2012) ("[T]he summonses issued by the IRS seeking documents in the possession of third-parties do not implicate petitioner's rights under the Fourth Amendment."), report and recommendation adopted, No. 2:11-mc-00039-WBS-DAD, 2012 WL 3886885 (E.D. Cal. May 4, 2012); *Muratore v. Department of Treasury*, 315 F. Supp. 2d 305,

8

310 (W.D. N.Y. 2004) ("As to the third-party summonses, however, because the documents sought have already been exposed to a third party, petitioners have no reasonable expectation of privacy, and, consequently, no Fourth Amendment objection to production of the documents."); *Vanderhoof v. C.I.R.*, 73 F. Supp. 2d 1165, 1169 (E.D. Cal. 1999) ("Vanderhoof does not have a legitimate privacy interest in bank records and similar documents such that her Fourth Amendment rights would be violated by the disclosures required by the summonses.").

Most importantly for resolution of the pending motion, it is well established that a person has no expectation of privacy in business and tax records turned over to an accountant. *Couch v. United States*, 409 U.S. 322, 335-36 (1973). In *Couch*, a taxpayer hired an accountant as an independent contractor and for many years delivered her business records to him for purposes of preparing her taxes. 409 U.S. at 324. The IRS undertook an investigation of the taxpayer for tax fraud in connection with the underreporting of her income. *Id*. As part of that investigation the IRS issued a summons to the accountant for the taxpayer's records. *Id*. at 325. The taxpayer asserted ownership of the business records and asserted a Fifth Amendment privilege as well as a reasonable expectation of privacy in them under the Fourth Amendment in an attempt to thwart their production. *Id*. at 325, 335. The Supreme Court rejected these claims, reasoning as follows:

> Although not in itself controlling, we note that no confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases [citations omitted]. Nor is there justification for such a privilege where records relevant to income tax returns are involved in a criminal investigation or prosecution. In *Boyd*, a pre-income tax case, the Court spoke of protection of privacy, 116 U.S., at 630, 6 S. Ct., at 532, but there can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return. What information is not disclosed is largely in the accountant's discretion, not petitioner's. Indeed, the accountant himself risks criminal prosecution if he willfully assists in the preparation of a false return. 26 U.S.C. § 7206(2). His own need for self-protection would often require the right to disclose the information given him. Petitioner seeks extensions of constitutional protections against self-incrimination in the very situation where obligations of disclosure exist and under a system largely dependent upon honest self-reporting even to survive. Accordingly, petitioner here cannot reasonably claim, either for Fourth or Fifth Amendment purposes, an expectation of protected privacy or confidentiality.

/////

> . . . . We hold today that no Fourth or Fifth Amendment claim can prevail where, as in this case, there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused.

*Id*. at 335-36.

The holding in *Couch* has been consistently applied by the lower federal courts. *See United States v. Hickok*, 481 F.2d 377, 379 (9th Cir. 1973); *KRL v. Moore,* No. 2:99-cv-02437-JAM-DAD, 2006 WL 548520, at *4 (E.D. Cal. Mar. 3, 2006) ("It is well established that a person has no expectation of privacy in business and tax records turned over to an accountant."), aff'd in part, rev'd in part on other grounds, and remanded sub nom. *KRL v. Estate of Moore*, 512 F.3d 1184 (9th Cir. 2013); *United States v. McLaughlin*, 910 F. Supp. 1054, 1059 (E.D. Pa. 1995) ("Moreover, the defendants' voluntary provision of the records to [his accountant] knowing that they would be used to prepare and be incorporated into tax returns which would be viewed by others, establishes that the defendants had no legitimate expectation of privacy in them."). *Crouch* and its progeny control here, especially in light of the fact that is undisputed that defendant Galloway provided his records to CPA Livsey with the understanding that they would be turned over in the course of the IRS tax audit.

Contrary to defendant's assertion, the enactment of 26 U.S.C. § 7609 did not alter this well-established principal. At the outset, it must be recognized that Congress gave the IRS a "broad mandate to investigate and audit persons who may be liable for taxes." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975) (internal quotation marks omitted). In order to assist the IRS in carrying out that mandate, it was provided the authority to "summon the person liable for tax ... or any other person ... to appear before the Secretary ... and to produce ... books, papers, records, or other data." 26 U.S.C. § 7602(a)(2). Section 7609 of Title 26 merely provides that when an IRS summons is served on a "third-party record keeper," the taxpayer to whom the records named in the summons relate is entitled to notice of the summons, and may move to quash the summons or intervene in the summons enforcement proceeding. 26 U.S.C. §§ 7609(a) and (b). According to the Congressional Committee Report, the purpose of § 7609, is merely to facilitate a taxpayer's opportunity to raise defenses to a third party summons.

Congress enacted § 7609 in response to the Supreme Court's decisions in *Donaldson v. United States*, 400 U.S. 517 (1971) and *United States v. Bisceglia*, 420 U.S. 141 (1975). *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 314–15 (1985). In *Donaldson* the Supreme Court had affirmed the denial of an employee's motions for intervention to oppose the enforcement of an IRS summons issued to his employer. 469 U.S. at 315. In *Bisceglia* the Supreme Court had upheld a third party summons issued by the IRS to a bank for purposes of identifying an unnamed individual who had deposited a large amount of severely deteriorated currency with the bank. *Id*. In response, citing only those two decisions in reports, in 1976 Congress enacted § 7609 addressing third party summons served by the IRS to ensure that: (1) the taxpayer to whose business or transactions the summoned records related is informed of the summons and provided an opportunity to intervene in any enforcement proceedings; and (2) in the case of so-called "John Doe" summons where the identity of the specific taxpayer is not known, the government makes a required showing in a court proceeding prior to issuance of the summons. *Id*. at 315-17.

Here, defendant Galloway points out that both the Senate and House Reports assert that the holdings in *Donaldson* and *Bisceglia* might "unreasonably infringe on the civil rights of taxpayers, including the right to privacy." (Doc. No. 67 at 6) (quoting S. Rep. No. 94-938 at 368 and H.R. Rep. No. 94-658 at 307). Therefore, defendant contends, in enacting § 7609, "Congress recognized that a taxpayer has a reasonable expectation of privacy in those documents provided to third-party record keepers." *Id*. at 6-7. Not surprisingly, defendant cites no authority for this contention. Neither the Senate nor House Report cited *Couch*, in which the Supreme Court had clearly held that the Fourth Amendment did not include a right of privacy that protected business records that had been turned over to a third-party accountant for purposes of preparing tax returns. 409 U.S. at 322.[12] Moreover, "as explained in the Congressional Committee Report, §

---

[12] *See Donaldson*, 400 U.S. at 521 ("there is now no constitutional issue in the case."); *Bisceglia*, 420 U.S. at 149 n.2 ("Respondent also argues that [the summons] violates the Fourth Amendment. . . . [A]s narrowed by the District Court the summons is at least as specific as the reporting requirements which were upheld against a Fourth Amendment challenge by banks in *California Bankers Assn. v. Shultz*, 416 U.S. 21, 63–70 (1974).").

11

7609 is not intended to expand the substantive rights of parties." *United States v. Horton*, 452 F. Supp. 472, 476 (C.D. Cal. 1978), aff'd, 629 F.2d 577 (9th Cir. 1980). Finally, as the authorities cited above establish, since the enactment of § 7609 in 1976, federal courts have continued to follow the binding authority of the Supreme Court's decision in *Couch* in concluding that a person has no expectation of privacy in business and tax records turned over to an accountant. Thus, defendant Galloway's rights under the Fourth Amendment are simply not implicated by CPA Livsey's production of records to the IRS.[13]

**2. Exclusionary Remedy Pursuant to the Court's Equitable Powers**

In the alternative, defendant Galloway argues that even if his constitutional rights were not violated by the manner in which the government obtained the records in question, this court should exercise its equitable powers to exclude those records from evidence at his trial because the IRS failed to comply with the requirements of 26 U.S.C. §§ 7603 and 7609 in obtaining them. (Doc. No. 67 at 11.)

However, defendant has cited no authority in support of the proposition that the failure of IRS agents to comply with the procedural requirements imposed by §§ 7603 and 7609 should result in the suppression of the documents obtained from evidence at trial. Normally, the exclusionary rule "does not extend to violations of statutes and regulations." *United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001); *see also United States v. Caceres*, 440 U.S. 741, 755 (1979) ("Respondent argues that the [IRS] regulations concerning electronic eavesdropping, even though not required by the Constitution or by statute, are of such importance in safeguarding the privacy of the citizenry that a rigid exclusionary rule should be applied to all evidence obtained in violation of any of their provisions. . . . Nevertheless, . . . we decline to adopt any rigid rule requiring federal courts to exclude any evidence obtained as a result of a violation of these rules."); *United States v. Peters*, 153 F.3d 445, 456 (7th Cir. 1998) ("[C]ourts have viewed with a

---

[13] This would be the case even if no summons had been served. *See United States v. Speck*, 59 F.3d 106, 108 (9th Cir. 1995); *see also* 26 U.S.C. § 7609(j). Moreover, this conclusion is not swayed by codes of professional conduct addressing the disclosure of confidential client information by accountants, for there is no client-accountant privilege under federal law. *See Couch v. United States*, 409 U.S. 322, 335 (1973) (no federal accountant-client privilege); *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973).

12

jaundiced eye the IRS' deviations from its own rules and regulations.  That does not mean, of course, that such a deviation is sufficient, standing alone, for exclusion of evidence."); *United States v. Michaud*, 860 F.2d 495, 498–99 (1st Cir. 1988) ("[T]he law is clear that an IRS agent's violation of a regulation of this sort does not prevent prosecution and conviction of a defendant, nor does it require suppression of evidence.").

Even in the rare areas of possible exception to this general rule, in considering whether suppression of evidence is an available remedy for actions taken in violation of a federal statute, and not the Fourth Amendment, the starting point is determining whether the statute itself contemplates that remedy.  *See United States v. Forrester*, 512 F.3d 500, (9th Cir. 2008); *see also* LaFave, *Search And Seizure, A Treatise On The Fourth Amendment*, § 1.59 (b) (Oct. 2016). Here, on their face, §§ 7603 and 7609 do not authorize the exclusion of evidence as a remedy for violation of their provisions.

Finally, defendant Galloway suggests that the court should exercise its equitable authority to exclude the records obtained from CPA Livsey because §§ 7603 and 7609 address privacy interests akin to those protected by the Fourth Amendment.[14]  Again, defendant has not provided a citation to any court decision reaching this conclusion and the court has failed to identify any. Moreover, in instances involving statutory provisions at least as closely connected to criminal investigations and prosecutions, suppression of evidence has not been found applicable where the provisions of those statutes have been violated.  For instance, it has been recognized that violation of the terms of the pen-trap statute (18 U.S.C. § 3122) does not constitute a violation of the

---

[14]  Defendant Galloway claims, in conclusory fashion, that had all of the statutory requirements been complied with he would have been successful in quashing any summons served on CPA Livsey because the government would have been unable to satisfy *United States  v. Powell*, 379 U.S. 48, 57 (1964). (Doc. No. 67 at 10.)  However, despite the fact that the records in question were obtained by the IRS in 2009, defendant Galloway has never made any such showing.  The court notes that the burden on the IRS in making a prima facie case for enforcement of such a summons is a slight one because the statute is to be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted.  *Crystal v. United States*, 172 F.3d 1141, 1143-44 (9th Cir. 1999) (and cases cited therein).  Finally, even if, for the sake of argument, it could not have been demonstrated that every procedural requirement had been met in connection with this summons, nothing would have prevented the IRS agents from re-issuing the summons in keeping with those requirements.

Fourth Amendment and that suppression of evidence is not an available remedy for violation of the statute. *See United States v. German*, 486 F.3d 849, 853-54 (5th Cir. 2007) (refusing to extend the exclusionary rule to statutory violations of the pen-trap statute); *United States v. Thompson*, 936 F.2d 1249, 1251-52 (11th Cir. 1991) (same); *see also United States v. Benevento*, 836 F.2d 60, 69 (2d Cir. 1987) (concluding that exclusionary rule was not applicable to statutory reasonable suspicion requirement for search of effects leaving country because "there is nothing in the legislative history of [31 U.S.C.] section 5317(b) indicating that Congress intended an exclusionary remedy for violations of the statute"), abrogated on other grounds by *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989); *United States v. Blue Diamond Coal Co.*, 667 F.2d 510, 520 (6th Cir.1981) (suppression not required for failure to obtain consent or an administrative warrant as required by statute for seizure of lawfully inspected records).

The court therefore declines to exercise any equitable authority it might have to exclude the records at issue from evidence due to the alleged failure by IRS agents to strictly comply with the procedural requirements of 26 U.S.C. §§ 7603 and 7609. *See California v. Sierra Club*, 451 U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."); *see also Neilson v. United States*, 674 F. Supp. 2d 248, 256 (D.D.C. 2009) (Taxpayer precluded, pursuant to an express provision of the Administrative Procedure Act ("APA"), from seeking injunctive relief under the APA against the IRS' allegedly improper issuance of third-party summonses for records of financial institutions); *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1530 (D. Nev. 1989) (no right to a private cause of action for damages resulting from the alleged violation of § 7609(f)).

### III. CONCLUSION

For all of the reasons set forth above, defendant Galloway's motion to suppress (Doc. No. 67) is denied in its entirety.

IT IS SO ORDERED.

Dated: **February 23, 2017**

UNITED STATES DISTRICT JUDGE